**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CONSTRUCCIONES HAUS SOCEIDAD et al., | : |
| Plaintiffs | : Civil Action No. 07-cv-0392 (PGS) |
| v. | : **OPINION** |
| KENNEDY FUNDING INC., GREGG WOLFER, | : |
| Defendants. | : |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants Fed.R.Civ.P. R 12(b)(6) motion to dismiss all claims asserted by Plaintiffs Acosta and the North American Free Trade Association ("NAFTA") and to dismiss Counts One, Two, Three, Four, Five, Six, Seven, Eight and Nine of the Complaint[1] as asserted by Plaintiffs Construcciones.

As Plaintiffs Construcciones and NAFTA are foreign corporations organized under the laws of the Country of Mexico, and Defendant Kennedy Funding Inc., is a corporation organized under the laws of the State of New Jersey this Court has jurisdiction pursuant to 28 U.S.C.§1332.

---

[1] Count One alleges (Violation of the New Jersey Civil Rico claim pursuant to N.J.SA. 2C:41-2(a)); Counts Two(Unjust Enrichment based upon the Failure of Certain Preconditions of the Loan Commitment) and Three (Unjust Enrichment Based upon an Aborted Contract and/or a Breach of Contract by Plaintiff) allege unjust enrichment; Count Four (Breach of Contract), Count Five, (Breach of the Covenant of Good Faith and Fair Dealing), Count Six alleges (Common Law Fraud); Count Seven( New Jersey Consumer Fraud Act Violation); Count Eight (Illusory Contract); and Count Nine (Void Option Contract).

Acosta is a shareholder of Construcciones.

*Facts*:

This case is one of a growing line of cases wherein a prospective borrower of Kennedy Funding, Inc. ("Kennedy") seeks return of a commitment fee. The complaint stems from a commercial lending transaction between Construcciones (the borrower) and Kennedy (the lender) for an amount between $3 - $8 million for construction of a development of single family homes in Xochitepec, Mexico. Generally, the loan negotiations collapsed between the time of issuance of a loan commitment agreement (Commitment) and time of closing. More specifically, on or about February 16, 2006, Construcciones and Kennedy entered into the Commitment. The Commitment provided for many things including a commitment fee and a methodology for determining the actual loan amount. The Commitment fee was $230,000. Plaintiff was required to pay $120,000 at the time of execution of the Commitment, and additional $110,000 at the Loan Closing. It is the $120,000 which is at issue here plus $10,000 commitment letter preparation fee.

The Commitment obligated Kennedy to loan Construcciones between $3 - $ 8 million to the Plaintiffs, subject to the conditions set forth in the Commitment. The Commitment letter issued by Kennedy provided that Kennedy would loan 60% of the "as is" disposition value of the real estate to a maximum of 60% of "as completed" disposition value of the Project to Plaintiffs. To arrive at the loan amount a complex valuation procedure was included in the Commitment. It reads in part:

> In accordance with the agreement by and between the parties, Borrower and Lender agree that the purpose of this Loan is to provide funds for improvements to the Collateral and that the basis of this Loan is the "as is" disposition value of

the real estate Collateral and the disposition value of the real estate Collateral "as completed" based on the plans, specs and budgets provided by Borrower. Disposition value is based on a three (3) to four (4) month sale to cash buyer.  The Borrower understands that KFI will retain Cushman & Wakefield, CB Richard Ellis or the equivalent to inspect the Collateral and, determine both the "as is" and "as completed" value of the Collateral based upon all plans, budgets, specifications, approvals, etc. provided by Borrower detailing the proposed improvements. Borrower acknowledges that KFI will not at any time lend or advance more than Sixty Percent (60%) of the disposition value of the real estate Collateral at that time.  Borrower understands that sufficient funds to complete the improvements will be withheld from the Loan amount (Completion Reserve) at the closing and disbursed in accordance with a construction draw schedule to be determined by KFI. Borrower further understands that the initial advance under this Loan will be limited to Sixty Percent (60%0 of the "as is" disposition value of the real estate Collateral and that further advances will be made to Borrower based upon Sixty Percent (60%) of the "as completed" disposition value, which value shall be determined by KFI in its sole discretion. Upon making a determination of the "as is" and "as completed" value, KFI will deliver to Borrower a Loan Offer equal to Sixty Percent (60%) of the "as completed" value, not to exceed the Financing Requested, and will provide the Borrower with the amount of the initial advance. Failure by the borrower to either accept or reject in writing the Loan Offer within three (3) days of receipt shall be deemed to be a rejection of the Loan Officer. Acceptance by Borrower of the Loan Officer, shall constitute a waiver of the right to engage the services of a third party appraiser as described herein.

In KFI's determination of the value of the property is disputed by the Borrower, Borrower may reject the Loan Offer and elect to engage the services of third party appraiser.  If Borrower makes this election, the Borrower and KFI shall "mutually agree upon a third party MAI appraiser, with proper credentials, contracted by KFI, and any fees for said appraiser to be reimbursed to KFI by Borrower prior to the appraisal being performed.  Upon receipt of the determination of the "as is" and "as completed" disposition value from the third party appraiser, KFI will, at its option, either offer a Loan (not to exceed in any event the financing request) of Sixty Percent (60%) of the "as completed" disposition value of the real estate Collateral with an initial advance (after deduction of the Completion Reserve) of Sixty Percent (60%) of the as is disposition value of the Collateral as determined by said appraiser or return the paid portion of the commitment fee.

If the Collateral is determined to have a value which would require KFI to make a Loan of Three Million Dollars ($3,000,000) or less, KFI will not be obligated to make the Loan unless the Borrower provides additional Collateral acceptable to KFI in its sole discretion to increase the amount of this loan to at least Three Million Dollars ($3,000,000). If the Loan amount is not increased, the

commitment fee will be earned by KFI.

The loan amount was to be a percentage of the value of the property at certain stages. This is the, disposition value is an amount equal to a "three to four month sale to a cash buyer" and Kennedy would "retain Cushman & Wakefield, CB Richard Ellis or the equivalent to inspect the Collateral and, determine both the 'as is' and 'as completed' disposition value of the Collateral...." Kennedy did not retain Cushman & Wakefield, CB Richard Ellis to inspect the Collateral and, determine both the 'as is' and 'as completed' value of the Collateral; instead, Kennedy maintains it hired an equivalent, Specialty Real Estate Advisors, LTD. ("Specialty") to appraise the Project.

According to the Complaint, plaintiff disputes that Specialty is the equivalent of Cushman & Wakefield and CB Richard Ellis. Specialty is an entity owned an operated by Bernard Volpe. Volpe is not a licensed appraiser, and Volpe's training is as an engineer.

Speciality determined that the "as is" market value of the land was $3 million. From that Specialty deducted 30% to arrive at a disposition value of the land of $2.1 million. Although not clearly explained, Volpe reduced the market value by 30% in order to reflect the discount a cash buyer would require for a cash sale quickly closed. According to the Commitment, upon hearing the "as is" value as determined by Specialty, Kennedy could require additional security if the disposition value was less than $3 million. Construcciones was flabbergasted by Kennedy's "as is" valuation and believed Kennedy was acting in bad faith. As such the closing was doomed, and Kennedy refused to return the partial commitment fee.

I.

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for

failure to state a claim upon which relief can be granted. On a 12(b)(6) motion, the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "The inquiry [before the Court] is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Center Prop., Inc*., 311 F.3d 198, 215 (3d Cir.2002).

A Court is not required to accept as true mere "unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino, Corp.*, 232 F.3d 173, 184 (3d Cir .2000). However, the Supreme Court instructs that for a complaint to survive a Rule 12(b)(6) motion to dismiss the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp., v. Twombly*, 127 S.Ct. 1955, 1965 (2007). When reviewing a Rule 12(b)(6) motion to dismiss the following are the only items that a Court may consider: the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents *Pension Guaranty Corp., v. While Consol., Indus.*, 998 F.2d 1192, 1996 (3d. Cir. 1992).

II.

Acosta is a shareholder of Construcciones and NAFTA advanced Construcciones the funds to pay the Commitment fee. These defendants are not parties to the Kennedy/Construcciones contract. Plaintiff asserts they are third party beneficiaries.

"To qualify as a third-party beneficiary it must be shown that the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties.' "

5

*Hadley v. James S. Shaffer*, 2003 U.S. Dist. LEXIS 14106 *13-14 (Del. Aug. 12, 2003) *citing Grand St. Artists v. Gen'l Electric Co.*, 19 F.Supp.2d 242, 253 (D.N.J. 1998). The court must look to the terms of the contract and the surrounding circumstances to determine whether the contracting parties intended the individual to be a third-party beneficiary. The primary focus of this inquiry is the intention of the parties. *See, E.I. DuPont & Co., v. Rhone Poulenc Fiber and Resin Intermediates*, S.A.S., 269 F.3d 187, 197 (3d. Cir. 2001)(declining to enforce an arbitration clause because there was no evidence that the parent was "anything more than an incidental beneficiary"). Without this intention to confer a benefit, the third party just so happens to benefit and he or she will have no contractual rights under the agreement. *See Reider Communities, Inc. v. N. Brunswick Twp.*, 227 N.J.Super. 214, 222, 546 A.2d 563 (App.Div.), *cert. denied,* 113 N.J. 638, 552 A.2d 164 (1988) (incidental third-party beneficiaries have no cause of action to enforce contractual promises). The complaint is devoid of any allegations that would indicate that ether Acosta or NAFTA were intended beneficiaries of the Commitment. As a consequence the complaints, of Acosta and NAFTA are dismissed with prejudice. *JM Realty & Investments, LLC v. Kennedy Funding, Inc*., No. 07-218, 2007 WL 2159563, n. 3 (D.N.J. 2007).

III.

With respect to Construcciones, Defendants move to dismiss the claims based on NJRICO, unjust enrichment, common law fraud, violation of the New Jersey Consumer Fraud Act, and the Commitment is unenforceable as illusory or a void option contract. Plaintiffs also request an opportunity to amend their complaint.

**Common Law Fraud**:

To state a claim for common law fraud Rule 9(b)[2] requires that a plaintiff plead the following: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) damages." *McConkey v. AON Corp.,* 354 N.J.Super. 25, 45-46, (App.Div.2002) citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997) The Third Circuit has stated that Rule 9(b) requires a plaintiff to state the circumstances of the alleged fraud with enough particularity so as to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Construcciones does not assert confusion as to definition of market value or disposition value as set forth in the Commitment, rather it disputes the nature and quality of the appraisal based on the qualifications of the appraiser.

As stated above, Construcciones alleges that Specialty's qualifications did not satisfy the terms of the Commitment because it was not equivalent to Cushman & Wakefield, or CB Richard Ellis. Plaintiffs maintain that Kennedy retained Speciality in order to obtain a artifically low valuation of the Collateral in order to relieve Kennedy of its obligation to loan funds, and to allow Kennedy to retain the partial Commitment fee. The Complaint is sufficiently specific to give notice to Kennedy of the nature of the fraud, and sufficient to withstand a motion to dismiss. See, *Prof'l Cleaning and Innovative Bldg., Serv., Inc. v. Kennedy Funding Inc.*, 245 F.App'x

---

[2]Neither party disputes that for the fraud claims (NJRICO; common law fraud; NJCFA) that Fed.R.Civ.P. Rule 9(b)'s specificity requirements apply *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir.2004); See*, F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir.1994)*.*

161, 165 (3d Cir. Aug 07, 2007)[3]; *Royale Luau Resort Inc., LLC. v. Kennedy Funding Inc.*, 2008 WL 482327 (D.N.J. Fed. 19, 2008); *JM Realty & Investments, LLC v. Kennedy Funding, Inc.*, No. 07-218, 2007 WL 2159563, n. 3 (D.N.J. 2007); *R.L. Wickman & Assocs. v. Kennedy Funding Inc.*, 203 F.3d 817 (3d Cir. 1999). The allegations of the complaint sufficiently assert false statements were made in the Commitment regarding the valuation and appraisal of the Mexico property. *Kennedy Funding, Inc., v. Ruggers Acquisition and Development,* No. 07-669, 2007 WL 2212859, * 2 (D.N.J. 2007).

**New Jersey Consumer Fraud Act**:

"The Consumer Fraud Act is intended to protect consumers who purchase 'goods or services generally sold to the public at large.' " *Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 24, 2007). The NJCFA states: "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction" N.J.S.A. § 56:8-19.

"To state a claim under the NJCFA, a plaintiff must allege each of three elements (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable

---

[3] *Prof'l Cleaning* is a non-precedential opinion, and is not binding on this Court. *Royale Luau Resort Inc., LLC. v. Kennedy Funding Inc.*, 2008 WL 482327 (D.N.J. Fed. 19, 2008) *citing In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006). However, as recognized in *Royale Luau*, the fact that the nearly identical contract language used by the same Defendants is at issue, makes *Prof'l Cleaning* highly persuasive to this Court's determination of the current motion.

loss." *Federico,* 507 F.3d at 202. (*citing Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (1994)). The NCFA defines unlawful practice broadly, as including but not limited to unconscionable commercial practice, deception, fraud, false promise, false pretense, misrepresentation, or knowing concealment N.J.SA. §56:8-2.

Defendants maintain that the NJCFA claims must be dismissed as Plaintiffs have failed to allege a predicate fraudulent act. Based on the analysis in the previous subsection regarding common law fraud, there is sufficient facts alleged regarding fraud. Hence, defendant's motion is denied. *Prof'l Cleaning*, 245 F.App'x at 165; *Royale Luau,*, 2008 WL 482327, *5-6.

**New Jersey Civil Rico Act**:

NJRICO provides that "[a]ny person damaged in his business or property by reason of a violation of [N.J.S.A.] § 2C:41-2 may sue" the violating party. N.J.S.A. § 2C:41-4c. To properly plead a NJRICO claim asserting a fraudulent predicate act[4], a party must comply with Rule 9(b), which requires that such allegations be pled with particularity *Capital First Corp., v.Todd*, No. 04- 6439 2006 WL 3827329, *15 (D.N.J. 2006); *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir.2004).

Defendants maintain that the NJRICO claims must be dismissed because Plaintiffs have failed to plead the existence of an enterprise. The statute defines an "enterprise" as "any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as

---

[4] As an illustration of allegedly deceptive trade practices, plaintiffs requested that this court review *Kennedy Funding Inc., v. Upland Development, Inc*., *et al*, Docket No., 6:97-cv-993, which was later affirmed by the U.S. Court of Appeals for the Eleventh Circuit on October 17, 2000, Docket No. 00-10676. Defendants were provided with an opportunity to respond. While this Court greatly appreciates the *Upland* court's description of both parties actions in that transaction, the case is from another district and fails to analyze New Jersey law. The Court finds *Upland* is not applicable to the current inquiry.

licit enterprises and governmental as well as other entities." N.J.S.A. 2C:41-1(2)(c).

Plaintiff only asserts claims against Kennedy and Wolfer, and it is unclear which one consists of the "enterprise" or the "persons" who enacted the NJRICO violations. For the reasons set forth in *Royale Luau*, the NJRICO claims as asserted against Kennedy are dismissed. See, *Royale Luau*, 2008 WL 482327 *7 citing *Elysian Fed. Sav. Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737, 757 (D.N.J. 1989).

The remaining defendant is Wolfer. Standing alone, he does not meet the statutory definition of an enterprise. Plaintiffs erroneously rely on *Franklin Medical Associates v. Newark Public Schools*, 828 A.2d 966 (N.J. App. Div. 2003). It is factually distinguishable.   The *Franklin* court found that an individual's guilty plea to a RICO charge combined with evidence of involvement by other individuals in the predicate conspiracy was sufficient to satisfy NJRICO's enterprise requirement. Such facts do not exist here.

**Breach of Contract**

Defendant Wolfer also moves to dismiss the breach of contract claims (presumably including breach of covenant of good faith and fair dealing) as he is not a party to the Commitment. It is well-settled that a shareholder is distinct from the corporate entity. Here, the corporate entity that entered into the Commitment was Kennedy, and Defendant Wolfer was acting in his role as representative thereof. In accordance with *Lions Gate,* the breach of contract claim against Wolfer should be dismissed as he is not a party to the agreement. *Kennedy Funding, Inc., v. Lion's Gate Dev., LLC.*, No. 05-4741, 2006 WL 1044807, *7 (D.N.J. April 18, 2006); See also *Royale Luau*, 2007 WL 482327, *9.

**Unjust Enrichment**

To state a claim for unjust enrichment, an equitable remedy usually applied where there is no contractual relationship between the parties, a plaintiff must allege that (1) at the plaintiff's expense; (2) the defendant received a benefit that; (3) under the circumstances would make it unjust for the defendant to retain the benefit without paying for it. *See Adamson v. Ortho-McNeil Pharm., Inc*., 463 F. Supp 2d 496, 505 (D.N.J.2006); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J.1994). "[W]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for unjust enrichment." *Royale Luau*, 2008 WL 482327,*7 quoting *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540, 2005 WL 1199045, at *7 (D.N.J. May 18, 2005)

Defendants assert that a claim for unjust enrichment is barred by the existence of a contract. The Plaintiffs dispute same. Similar to the *Royale Luau* case, plaintiffs attempt to "to cover all angles by asserting in one unjust enrichment count that no contract exists and therefore Defendants have been unjustly enriched...[and then assert] that if there was a contract, Defendants breached it and therefore they have been unjustly enriched."*Royale Luau*, 2008 WL 482327 *7. In their view the loan did not close and no contract existed. Plaintiff's theory has been rejected by *Royale Luau* court because Kennedy and Construcciones entered into a contract, the Commitment. *Royale Luau*, 2008 WL 482327,*7 As the dispute is covered by an express contract the terms of the Commitment control.

The answer differs with regard to Mr. Wolfer. As noted above, there is no contractual relationship between him and plaintiff. To the extent plaintiff can prove the elements of unjust enrichment as they apply to Wolfer, the count stands.

**Illusory Contract**

Finally, the defendant submits that the Counts alleging that the contract is illusory and/or constitutes an option contract must be dismissed. The Court agrees. In *Omni v. Kennedy*, 2007 U.S. Dist. LEXIS 92569, * 16, No. 04-4764 (D.N.J. 2007), the Court dealt with the issue at length. It is best to consider these arguments as a component of the covenant of good faith and fair dealing. The reasoning set forth in Omni is equally applicable here. These counts are dismissed.

**Request to Amend Complaint**

Plaintiff requests informally an opportunity to amend its complaint. The Plaintiff is required to seek such leave by way of motion and to attach the amended pleadings. Fed.R.Civ.P. R. 15(a); *Cureton v. NCAA*, 252 F. 3d 267, 272-73 (3d. Cir. 2001). Plaintiff has not done so, there is no reason offered why the usual practice should not be followed. The request is denied

In conclusion, with regard to NAFTA and Acosta, the complaint in its entirety is dismissed. With regard to Construcciones, Counts 2 and 3 are dismissed as to Kennedy, but not as to Wolfer; Counts 4 and 5 are dismissed as to Wolfer; and Counts 1, 8 and Count 9 are dismissed as to all defendants. The motion to dismiss is denied on Counts 6 and 7.

                                      *s/Peter G. Sheridan*
                                      PETER G. SHERIDAN, U.S.D.J.

April 24, 2008